# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

WAYNE L. BEGAY, JR.,

> Petitioner,

v.                                                    CIV No. 01-1279 LH/LFG

TIM LEMASTER,

> Respondent .

## MAGISTRATE JUDGE'S FINDINGS
## AND RECOMMENDED DISPOSITION[1]

### Findings

1.      This is a proceeding on a petition for writ of habeas corpus under 28 U.S.C. § 2254,

filed November 9, 2001. [Doc. 1]. Respondent filed his Answer [Doc. 10] on December 19, 2001,

and requested dismissal of the petition. Petitioner Wayne L. Begay, Jr. ("Begay") currently is

confined at the New Mexico State Penitentiary in Santa Fe, New Mexico.

2.      On September 27, 1996, a jury convicted Begay of murder in the first degree. Under

a Corrected Finding of Guilt by Jury and Judgment and Sentence, entered October 30, 1996, by the

---

[1]Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

Eleventh Judicial District Court in State v. Begay, CR-95-254-1, (San Juan County, New Mexico), Perez was sentenced to life imprisonment.  [Doc. 10, Ex. B.]

3.       As grounds for federal habeas review, Begay sets forth two separate claims of ineffective assistance of counsel in violation of his Sixth Amendment rights and enumerates nine different alleged failures by defense counsel:  (a) failure to object to the court's omission of a limiting or cautionary instruction to the jury regarding evidence of Begay's former co-defendants' admissions of guilt or guilty pleas; (b) failure to request and tender a limiting or cautionary instruction to the effect that Begay's former co-defendants' admissions of guilt or guilty pleas should not be considered evidence of Begay's guilt; (c) failure to investigate and present Begay's defense of impossibility; (d) failure to call an expert witness or other witnesses to support a defense of impossibility; (e) failure to request admission or tender as an exhibit the film "Natural Born Killers"; (f) failure to object to the State's argument during trial and closing that Begay was a "nihilistic thrillseeking killer," similar to the characters depicted in "Natural Born Killers"; (g) incompetent closing argument due to failure to counter the State's argument that Begay was similar to characters depicted in "Natural Born Killers"; (h) failure to challenge and seek dismissal of the charge of conspiracy; and (i) failure to raise meritorious issues on appeal.

4.       Respondent denies all allegations set forth in Begay's petition and argues that Begay failed to state any meritorious claim under § 2254.  Respondent agrees that "most of the issues" advanced by Begay were raised in Begay's direct appeal of his conviction, but appears to contend Begay procedurally defaulted on some claims for failure to present them to state courts.  Respondent further argues that Begay cannot demonstrate cause for the default and actual prejudice as a result

of the alleged violations, nor show that failure to consider the claims will result in a fundamental miscarriage of justice.

**Factual and Procedural History**

5.      Begay was found guilty of stabbing and killing Quincy Jim ("Jim"). The stabbing occurred in March 1995, in the Four Corners area, after Begay and his three friends, Althea Kinlacheeny, Melvin Calboni, Jr., and Janine Todacheeny spent the evening together drinking. Begay supposedly had used methamphetamine earlier in the evening or day. [Doc. 10, Ex. G, p. 1, Ex. J, p. 1.] The four often got together to drink, and there was testimony that the two men sometimes did drugs, including methamphetamine. None of the four were acquainted with Jim, whom they picked up at a bar. Later that evening, Begay stabbed Jim, and he and Calboni kicked him. Jim was found dead the next day, with eight stab wounds and as well as blunt injuries to the head. [Ex. J, p. 2.]

6.      All four were initially named as Defendants and charged with first degree murder, conspiracy to commit first degree murder and evidence tampering. [Ex. G, p. 11.] Kinlacheeny, Calboni and Todacheeny entered plea agreements[2] and testified against Begay at trial. The State dismissed the tampering charge against Begay on the morning of trial.

7.      The State presented evidence that Begay was a fan of the motion picture "Natural Born Killers" (depicting a man and a woman on a crime spree killing people for a thrill), that he had rented the movie, failed to return it and had viewed it many times. [Ex. G, p. 12; Ex. H, p. 2.] There was testimony that Begay often told his friends after or while watching the movie that he wanted to "pull a fatality," apparently borrowing a phrase from the movie. He supposedly was drunk sometimes

---

[2]Kinlacheeny pled to aiding and abetting an aggravated battery; Todacheeny pled to aggravated battery resulting in death; Calboni pled to voluntary manslaughter.

when he made that comment, but not always.  On the evening in question, Begay told Calboni that he wanted to start some trouble, that he wanted to "do somebody in," and "shank someone."  There was testimony that the two men wanted to beat somebody up that evening and the four were driving around looking for someone who was drunk.  [Ex. G, p. 6.]  After finding and stabbing Jim, Begay stated to his friends that he had stabbed him.  Kinlacheeny testified that the following day she overheard Begay tell Calboni that he had stabbed Jim eight times.  [Ex. G, p. 10.]  After a five-day jury trial, Begay was convicted of first degree murder, but was found not guilty of conspiracy to commit first degree murder.  During the trial, Begay argued that the stabbing was second degree murder because he did not have the deliberate intent to kill and because his use of alcohol and methamphetamine precluded him from forming the deliberate intent required for first degree murder. A jury instruction consistent with this defense was submitted to the jury.  [Ex. G, p. 1.]

8.     Begay took a direct appeal from the first degree murder conviction.  On August 27, 1998, the New Mexico Supreme Court affirmed his conviction and sentence in a published opinion. State v. Begay, 1998-NMSC-029, 125 N.M. 541, 964 P.2d 102 (1998) [Doc. 10, Ex. J.]  On appeal, Begay argued that a potential Native American juror was improperly struck from the venire, the trial judge and prosecutor made improper inflammatory remarks regarding the film "Natural Born Killers", the trial judge improperly asked an expert witness about effects of methamphetamine use, the jury was improperly instructed regarding diminished capacity, and there was insufficient evidence to support a finding that Begay formed a deliberate intent to kill.  [Ex. J, p. 1.]  Begay also contended that the cumulative impact of the trial court's errors warranted reversal.  [Ex. J, p. 15.]  The New Mexico Supreme Court rejected all of Begay's arguments.

9.      On April 5, 1999, Begay filed a first petition for writ of habeas corpus with the state court.  [Doc. 10, Ex. M.]  This petition raised the same issues that Begay included in his direct appeal and some additional grounds for error, including whether the trial court erred in admitting a knife into evidence that was found in an area where the four co-defendants had been on the evening of the murder but that was not affirmatively linked to Begay [Ex. G, pp. 10-11], whether the court erred in admitting autopsy photos of the victim's knife wounds, and whether the court erred in admitting opinion testimony of a pathologist regarding the victim's ability to defend himself.

10.     On June 17, 1999, the district judge summarily denied Begay's petition for writ of habeas corpus stating only that the issues should have been raised by appeal.  [Doc. 10, Ex. N.] Begay moved for an extension of time to file a petition for writ of certiorari, which was granted, but Begay never filed the writ.  Therefore, on August 23, 1999, the New Mexico Supreme Court dismissed the matter for failure to perfect the appeal.  [Ex. R.]

11.     On September 17, 1999, Begay filed his second petition for writ of habeas corpus with the state court.  [Ex. T.]  The second petition raised the same issues contained in Begay's present federal petition for writ of habeas corpus.  [Ex. T, handwritten pp. 1-15, attached to Ex. T; typed pp. 1-14, attached to Ex. U.]  On June 12, 2001, the state trial court entered a Summary Dismissal of Petition for Writ of Habeas Corpus and All Subsequent Motions.  [Ex. V.]  The trial court concluded that Begay was not entitled to relief because the relief he sought "to a great extent" was the same as what he requested in the earlier petition that was dismissed.  The court further found that the relief sought, "while couched in ineffective assistance of counsel terms, raises many issues that should have [been], or were, raised on direct appeal and do not implicate issues of effective assistance of counsel.

[Ex. V.]  As to any issues that did implicate effective issues of counsel, the court denied those issues "on the face of the motion and the record herein."  [Ex. V.]

12.     On July 30, 2001, Begay filed a petition for writ of certiorari.  In that petition, Begay again argued the same issues that were contained in his second petition for writ of habeas corpus, together with why he believed the district court erred in denying the second petition.  [Ex. Y, handwritten pp. 1-18, attached to Ex. Y.]  On August 15, 2001, the New Mexico Supreme Court denied Begay's petition for writ of certiorari.  [Ex. Z.]

13.     Begay appears to have exhausted his state remedies with respect to the issues raised in the federal habeas petition since he asserted the same claims in his second state habeas petition. It is unclear from the Answer whether Respondent concedes that Begay exhausted his remedies, although Respondent admits that Begay advanced most of these issues in his direct appeal (although it seems the issues actually were raised in the second state habeas petition rather than in the direct appeal).  Notwithstanding any disagreement by Respondent as to exhaustion, the Court concludes Begay did exhaust his state remedies.

14.     The next question is whether Begay is procedurally barred from raising some or all of the issues in the federal habeas petition.  Again, Respondent's Answer does little to assist the Court in narrowing the issues and never explicitly identifies which specific claims it contends were procedurally defaulted.[3]  Instead, Respondent argues generally that Begay cannot demonstrate cause for the default, actual prejudice, or a fundamental miscarriage of justice.

---

[3]In addition, Respondent's Answer incorrectly implies that the state trial court denied the second habeas petition solely because Begay had not raised the issues on direct appeal.  The trial court also found that any ineffective assistance of counsel issues that Begay raised were denied on the face of the motion and court record.

## Procedural Default

15.    "Where a state has raised and preserved the issue of procedural default, federal courts generally do not review issues that have been defaulted in state court on an independent and adequate state procedural ground, unless the default is excused through a showing of cause and actual prejudice or a fundamental miscarriage of justice.  Procedural default is grounded in concerns of comity and federalism; it is not jurisdictional."  Jackson v. Shanks, 143 F.3d 1313, 1317 (10th Cir.), *cert. denied*, 525 U.S. 950, 119 S.Ct. 378 (1998) (internal citations omitted).  "If a state court applies an 'independent and adequate' procedural rule to refuse to reach the merits of a constitutional claim (i.e., to procedurally bar a claim), a federal court will generally respect the state's procedural rule and also refuse to consider the constitutional claim in a petition for writ of habeas corpus.  A state procedural rule is 'independent' if it is separate and distinct from federal law.  A state procedural rule is generally 'adequate' if it is applied evenhandedly in the vast majority of cases."  Hallmark v. Martin, 112 F. Supp. 2d 1122, 1128 (N.D. Okla. 2000).

16.    Based on a review of the proceedings, it appears that the state trial court found that the issues raised in Begay's first habeas petition were procedurally defaulted because he had not raised those same issues on direct appeal.[4]  Begay failed to perfect his appeal by timely filing a petition for writ of certiorari as to the first habeas petition.  Regarding the second habeas petition, the trial court again concluded that most of the issues raised could have been or were raised in the direct appeal, so again, it could be said that some of the issues were procedurally defaulted.  To the extent that Begay raised true claims of ineffective assistance of counsel, the court denied them.  Begay filed a timely petition for writ of certiorari that was denied.  Based on the state court rulings,

---

[4]Some of the issues in Begay's first state habeas petition were addressed on direct appeal; others were not.

it appears that an argument could be made that all of Begay's claims are procedurally defaulted. In turn, Begay might assert that there was no independent and adequate state procedural ground for default.

17.     In <u>Jackson</u>, the petitioner argued that there was not an independent and adequate state procedural ground to permit procedural default because New Mexico courts do not strictly or regularly apply the rule that issues not raised on direct appeal may not be raised in a habeas petition. The Court rejected the petitioner's argument and concluded that "New Mexico law provides that the failure to raise issues in a direct criminal appeal results in a waiver of those claims for purposes of state post-conviction relief. This rule is 'adequate' for purposes of federal habeas procedural default doctrine if ' the [state] court's actual application of the . . . rule to all 'similar' claims has been evenhanded 'in the vast majority' of cases. <u>Id.</u> at 1318 (internal citations omitted). The Court found that New Mexico courts had consistently and even handedly applied the waiver rule.

18.     Here, the problem with concluding that Begay procedurally defaulted on all of the issues raised in his federal habeas petition is that he identifies them as ineffective assistance of counsel claims. The general rules regarding review of claims procedurally barred in state court do not apply to ineffective assistance of counsel claims brought under the Sixth Amendment. The Tenth Circuit held that "in habeas proceedings where 'the underlying claim [defaulted] is ineffective assistance of counsel, . . . the 'general' rule [of waiver of claims not raised on direct appeal] must give way because of countervailing concerns unique to ineffective assistance claims." <u>Id.</u> at 1318 (internal citations omitted). In <u>Jackson</u>, the Tenth Circuit concluded that the ineffective assistance of counsel claim was not waived under circumstances where the petitioner had no chance to develop facts relating to his counsel's performance and had the same counsel during his trial and direct appeal. "Absent the

opportunity to consult with new counsel to ascertain whether counsel in his direct criminal proceedings performed adequately or develop facts relating to his counsel's performance, the state's imposition of a procedural bar 'deprives [petitioner] of any meaningful review of his ineffective assistance claim.' Id. at 1319 (internal citations omitted).

19.     Although the circumstances are distinguishable from those in Jackson since Begay was represented by different counsel during the underlying criminal proceedings (R. David Pederson) and the direct appeal (Lisbeth Occhialino, Public Defendant Department), the state court did not altogether deny the second habeas petition (raising ineffective assistance of counsel claims) on procedural grounds.  *See* Jackson, 143 F.3d at 1319 ("We are not inclined to rely on a state procedural rule that the New Mexico courts did not rely upon.")  To some extent, the state court appeared to deny the ineffective assistance claims on the merits, although it did not provide any reasoning for its decision.  Moreover, the Tenth Circuit generally holds that the procedural bar rule does not apply to ineffective assistance of counsel claims.  United States v. Galloway, 56 F.3d 1239, 1241 (10th Cir. 1995).

20.     Thus, because the Court decides it will examine Begay's claims of ineffective assistance of counsel on the merits, there is no need for a discussion of cause and prejudice[5] and/or fundamental injustice as raised by the Respondent.  However, the Court recognizes, similar to the state trial court, that at least some of Begay's ineffective assistance claims are merely couched in those terms and do not actually implicate questions regarding effective assistance of counsel.

---

[5]The Tenth Circuit has pointed out that an examination of "prejudice" as applied to avoiding a procedural default, involves an evaluation of the merits of the claim in any event.  Galloway, 56 F.3d at 1242.

## Deference to State Court Adjudications

21.     A federal court is precluded from granting habeas relief on any claim adjudicated on the merits by the state courts, unless the proceeding resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d); Smallwood v. Gibson, 191 F.3d 1257, 1264-65 (10th Cir. 1999), *cert. denied*, 531 U.S. 833, 121 S.Ct. 88 (2000).  "Federal habeas courts do not sit to correct errors of fact or to relitigate state court trials.  Our jurisdiction is limited to ensuring that individuals are not imprisoned in violation of the Constitution."  Thompson v. Oklahoma, 202 F.3d  283 (Table, text in Westlaw), No. 98-7158, 2000 WL 14404, at *6 (10th Cir. Jan.10, 2000), *cert. denied*, 530 U.S. 1265, 120 S.Ct. 2725 (2000).

22.     Section 2254(d) was amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which "increase[d] the deference to be paid by the federal courts to the state court's factual findings and legal determinations."  Houchin v. Zavaras, 107 F.3d 1465, 1470 (10th Cir. 1997).  The Tenth Circuit Court of Appeals recently explained:

> Under § 2254(d)(1), a federal court may grant a writ of habeas corpus only if the state court reached a conclusion opposite to that reached by the Supreme Court on a question of law, decided the case differently than the Supreme Court has decided a case with a materially indistinguishable set of facts, or unreasonably applied the governing legal principle to the facts of the petitioner's case.  'Under § 2254(d)(1)'s unreasonable application clause . . ., a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, the application must also be unreasonable.'  'In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.'  AEDPA also requires federal courts to presume state court factual findings are correct, and places the burden on the petitioner to rebut that presumption by clear and convincing evidence.

Sallahdin v. Gibson, 275 F.3d 1211, 1221-22 (10th Cir. 2002) (*relying on* 28 U.S.C. § 2254(e)(1)).

23.     Before reaching Begay's habeas claims, the Court must determine whether the state court adjudicated the claims on the merits. While the state court summarily denied the motion, its denial was not merely on technical defect or procedural irregularity. Rather, the court's order denied the petition "on the face of the motion and the record herein." There is authority for the proposition that a court's summary dismissal of a habeas petition constitutes an adjudication on the merits. Aycox v. Lytle, 196 F.3d 1174, 1177-78 (10th Cir. 1999) (affording deference under the AEDPA, to state court's rejection of claim's merit, despite lack of any reasoning); Weeks v. Angelone, 176 F.3d 249, 259 (4th Cir. 1999), *aff'd*, 528 U.S. 225, 120 S.Ct. 727 (2000); Swann v. Taylor, 173 F.3d 425 (Table, Text in Westlaw), 1999 WL 92435 at *11 (4th Cir.), *cert. denied*, 526 U.S. 1106, 119 S.Ct. 1591 (1999). *See also* Wright v. Angelone, 151 F.3d 151, 157 (4th Cir. 1998) (refusing to presume that a summary order indicated a cursory or haphazard review of a petitioner's claims). Therefore, Begay's ineffective assistance of counsel claims are subject to review under the standard set forth in 28 U.S.C. § 2254(d).[6] *See* Gonzales v. McKune, 247 F.3d 1066, 1072 (10th Cir. 2001) (analyzing ineffective assistance of counsel claims under § 2254(d); Florez v. Williams, 281 F.3d 1136, 1143 (10th Cir. 2002) (same); Jackson v. Okla. Dep't of Corrections, 18 Fed. Appx. 678, 682 , 2001 WL 987595 at *4 (10th Cir. June 26, 2001) (same).

---

[6]To the extent that Herrera v. LeMaster, 225 F.3d 1176, 1178-79 (10th Cir. 2000), is read to mean that ineffective assistance claims should be reviewed only under § 2254(e)(1) rather than § 2254(d)(1), this Court notes that the Tenth Circuit appears to routinely analyze such claims under § 2254(d).

## Ineffective Assistance of Counsel

24.     An accused has a Sixth Amendment right to assistance of counsel in a criminal prosecution, which includes the right to effective assistance of counsel at trial and on direct appeal. Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063-64 (1984); Evitts v. Lucey, 469 U.S. 387, 396, 105 S.Ct. 830, 836 (1985). "The essence of a claim of ineffective assistance is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." Kimmelman v. Morrison, 477 U.S. 365, 374, 106 S.Ct. 2574, 2582 (1986).

25.     To establish ineffective assistance of counsel, Begay must make a two-prong showing: (1) that counsel's performance was constitutionally defective; and (2) that the deficient performance prejudiced the defense, in that counsel's errors were so serious as to deprive the defendant of a defense. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. To prove deficient performance, Begay must overcome the presumption that counsel's conduct was constitutionally effective. Duvall v. Reynolds, 139 F.3d 768, 776 (10th Cir.), *cert. denied*, 525 U.S. 933, 119 S.Ct. 345 (1998). Scrutiny of counsel's performance must be "highly deferential" and must avoid the distorting effects of hindsight. Miles v. Dorsey, 61 F.3d 1459, 1474 (10th Cir. 1995), *cert. denied*, 516 U.S. 1062, 116 S.Ct. 743 (1996). In order to be found constitutionally ineffective, trial counsel's performance must have been completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy. Hoxsie v. Kerby, 108 F.3d 1239, 1246 (10th Cir.), *cert. denied*, 522 U.S. 844, 118 S. Ct. 126 (1997).

## 1.     _Limiting or Cautionary Instruction Regarding Co-Defendants' Guilty Pleas or Admissions of Guilt (see supra, ¶ 3, grounds "a" & "b")_:

26.     Begay contends it was error by counsel not to object to the court's omission of a cautionary or limiting instruction with respect to admissions of guilt or guilty pleas by Begay's former co-defendants who testified against him.  He further asserts that the trial court gave no cautionary instruction to the jury, either before or after the co-defendants' testimony, that any admissions of guilt by them were admitted solely for credibility purposes and were not evidence of Begay's guilt.  He also claims his counsel should have requested and tendered such an instruction.[7]  [Doc. 1, handwritten pp. 1-3.]

27.     The Tenth Circuit has held that a co-defendant's guilty plea may not be used as substantive evidence of a defendant's guilt.  United States v. Baez, 703 F.2d 453, 455 (10th Cir. 1983).

> However, either the government or the defense may elicit testimony from a co-defendant regarding his guilty plea for purposes of aiding the jury in its assessment of the co-defendant's credibility as a witness. Further, evidence of a co-defendant's guilty plea may be used to establish 'the witness's claim to firsthand knowledge based on his or her admitted participation.' . . . . 'Because of the potential for prejudice, cautionary instructions limiting the jury's use of the guilty plea to permissible purposes are critical.'

United States v. Whitney, 229 F.3d 1296, 1304 (10th Cir. 2000) (_relying on_ Baez, 703 F.2d at 455)

---

[7]The State provided no response to this argument and apparently relied entirely on its position that Begay procedurally defaulted on all or most of his claims.

13

(additional citations omitted)). <u>Whitney</u> and <u>Baez</u> concerned a petitioner's direct appeal, rather than a habeas matter and addressed a "plain error" review.[8]

28.     In <u>Whitney</u>, notwithstanding the admission of co-defendants' guilt, the Court affirmed the convictions primarily because the government elicited the testimony about the co-defendants' guilty pleas for the legitimate purpose of informing the jury of the circumstances of why they were testifying and their knowledge of the offense. 229 F.3d at 1304. The prosecution did not improperly emphasize or over use evidence of the guilty pleas as substantive evidence of guilt. <u>Id.</u> at 1305. In addition, the Court collected opinions from a number of other sister circuits recognizing legitimate reasons to bring out plea agreements of co-defendants, including the scenario where the co-defendant is a witness at trial and will be subject to the rigors of cross-examination. <u>Id.</u> at 1306 (internal citations omitted).

29.     In <u>Baez</u>, the Tenth Circuit concluded, with respect to admission of information regarding co-defendants' guilt, that plain error warranted a new trial. However, in that case, the trial judge commented to prospective jurors during voir dire that two co-defendants, one of whom did not testify, had pled guilty to lesser charges or portions of the indictment. 703 F.2d at 454. Similarly, in <u>United States v. Austin</u>, 786 F.2d 986 (10th Cir. 1986), the Tenth Circuit reversed the convictions of two defendants because the trial court permitted the government to inform the jury that ten other co-defendants had been arrested and convicted, while only two of the ten actually testified at trial. No cautionary instruction was given in <u>Austin</u>, and during closing, the government impermissibly

_____

[8]In <u>Foster v. Ward</u>, 182 F.3d 1177, 1193 (10th Cir. 1999), *cert. denied*, 529 U.S. 1027, 120 S.Ct. 1438 (2000), the Court noted that "in the habeas context, [the petitioner's burden in attacking his conviction and sentence based on an erroneous omission of the cautionary jury instruction is a heavy one--'even greater than the showing required to establish plain error on direct appeal.'" (*citing* <u>Maes v. Thomas</u>, 46 F.3d 979, 984 (10th Cir. 1995)).

suggested that guilty birds of a feather flock together.  Id. at 991.  Under the facts of that case, the Court concluded that the repeated references about co-defendants who were found guilty could have affected the jury's decision.  Id. at 992.

30.     Here, Begay provides no argument nor evidence that the government improperly introduced evidence of Begay's former co-defendants' guilt at trial and/or that certain remarks by the prosecution led to the conclusion that the government was trying to use the co-defendants' guilt as substantive evidence of Begay's guilt.  Indeed, Begay provides no detail as to when or how often, if at all, the prosecutor, defense or the court may have referred to the co-defendants' guilty pleas or admissions of guilt.

31.     Clearly, Tenth Circuit precedent permits both the government and defense to elicit evidence regarding a testifying co-defendant's guilty plea for purposes of credibility and other legitimate reasons.  Based on these circumstances where Begay has not provided any evidence or argument to show that the prosecution improperly used the co-defendants' guilty pleas, the Court cannot conclude that such evidence was considered by the jury as substantive evidence of Begay's guilt.  This seems particular true under these facts where Begay did not actually claim innocence of the charges, but instead presented a defense that he could not have been guilty of *first degree* murder since he allegedly did not act with deliberate intent.  *See also* Government of Virgin Islands v. Mujahid, 990 F.2d 111, 117-18 (3d Cir. 1993) (reference to co-defendant's guilty plea in government's opening and co-defendant's testimony was not plain error, even where court gave no limiting instruction, because of the strength of other admissible evidence of the defendant's guilt and lack of any intentional prosecutorial misconduct).

32.     The Court also concludes that Begay has not satisfied the two-prong showing under Strickland, as he must.  In Ashe v. Jones, the Court concluded that trial counsel may have had a sound reason for not requesting a limiting instruction with respect to other sexual acts evidence.  208 F.3d 212 (Table, Text in Westlaw), 2000 WL 263342 at *6 (6th Cir. Feb. 29, 2000).  "'The failure to seek [a jury] admonition in and of itself does not indicate ineffective assistance of counsel, as it is quite evident that [the defendant's] counsel simply wanted to get past the prior convictions as quickly as possible without bringing undue attention to them as would have happened upon requesting a jury admonition.'" Id. (internal citation omitted).  Here, counsel for Begay may have decided after hearing detailed testimony from the three co-defendants regarding Begay's remarks and actions on the night in question, that to further instruct the jury about the use of the evidence of their guilt would only re-emphasize Begay's conduct.  Therefore, the Court finds that Begay did not satisfy the first prong of Strickland because he has not demonstrated that his attorney acted completely unreasonably or with no relationship to a reasonable defense strategy.

33.     Even if Begay's attorney's performance were found deficient in this regard, Begay did not satisfy the second prong of Strickland, i.e., that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, or that 'counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair." Ashe, 2000 WL 263342 at *7 (citing Strickland, 466 U.S. at 694 and Lockhart v. Fretwell, 506 U.S. 364, 372 (1993)).  It is insufficient to show that the errors had "some conceivable effect on the outcome of the proceeding, because virtually every act or omission of counsel would meet that test."  Instead, "reasonable probability" means "a probability sufficient to

undermine confidence in the outcome." Fisher v. Lee, 215 F.3d 438, 447 (4th Cir. 2000), *cert. denied*, 531 U.S. 1095, 121 S.Ct. 822 (2001).

34.     According to the evidence presented to the jury, Begay stabbed Jim eight times while killing him, and in fact boasted to his friends that he had stabbed him eight times.  When the body was recovered, eight stab wounds were found.  Ample evidence was admitted regarding Begay's frequent talk, prior to the stabbing, of wanting to "pull a fatality" and that he remarked on the night in question that he wanted to "shank" someone.  His three friends and former co-defendants, while sometimes providing conflicting testimony, gave extremely detailed testimony regarding the events of the night Jim was stabbed.  Indeed, the New Mexico Supreme Court stated that there was "competent and overwhelming testimony presented to the jury regarding the manner in which Jim was killed and the incriminating statements [Begay] made on numerous occasions prior to and on the evening of the murder . . . ." [Ex. K, pp. 7-8.]  Based on the testimony described, the Court concludes that there is no reasonable probability that a cautionary instruction regarding the proper use of the co-defendants' guilty pleas would have changed the outcome of the trial.

35.     Therefore, the Court finds that the state court's adjudication of the ineffective assistance of counsel claims was not contrary to clearly established federal law or an unreasonable application of clearly established federal law.  Further, the state court's denial of those claims was not based on an unreasonable determination of the facts in light of the evidence presented.  Accordingly, Begay's ineffective assistance of counsel claims related to omission of a cautionary instruction should be dismissed.

##### 2. ***Impossibility Defense*** *(see supra, ¶ 3, grounds "c" & "d"):*

36.     Begay claims that his attorney rendered ineffective assistance by failing to investigate and present a defense of impossibility and by not calling an expert witness or other witnesses to support such a defense.  It is unclear what Begay means by a defense of "impossibility."  He states in his brief that a viable defense of impossibility would have shown that he was not a "nihilistic thrill seeker-type killer," as depicted by the film "Natural Born Killers."  [Doc. 1, handwritten p. 3 (subpart 2(a)(1); p. 4 (subpart 4).]  He contends that there were "trial record facts" showing that he was a first time offender and had never been convicted of any 1st or 2nd degree murders or "other homicides." [Doc. 1, handwritten p. 5 (subpart 8).]  Begay explained that without such a defense, the jury had no choice or explanation as to his "mental state and behavior" which was "critical to the defense of the serious charge of premeditated nihilistic thrillseeker-1st degree murder, and thus had no other option but to convict." [Id. (subpart 9).]  In support of this argument, Begay cites to several cases involving trial counsel's failure to present a defense of insanity.[9]

37.     It appears that Begay's argument regarding "impossibility" is actually one he already raised under a number of different guises, including his objections to the prosecution's theme that he was acting similarly to characters from the film "Natural Born Killers," and his objection regarding jury instructions that were submitted regarding diminished capacity.  In addition, Begay's "impossibility defense" might be construed as an argument that his counsel somehow was deficient in failing to provide more evidence to support the diminished capacity defense.

---

[9]For example, Genius v. Pepe, 50 F.3d 60 (1st Cir. 1995) involved the failure of defense counsel to pursue an insanity defense after the defendant initially was found incompetent to stand trial – facts that are not present in the instant case.  Another case cited by Begay is Troedel v. Wainright, 667 F. Supp. 1456, 1461 (S.D. Fla. 1986), is inapposite since it concerned counsel's failure to investigate a co-defendant's background.

38.     The New Mexico Supreme Court, on direct appeal, provided detailed analysis regarding introduction of evidence about the film and the diminished capacity jury instructions. [Doc. 10, Ex. K.] The Court concluded that there was sufficient evidence presented of Begay's alcohol consumption and possible use of methamphetamine to warrant the diminished capacity jury instruction. In addition, Begay presented testimony of two experts regarding his defense of diminished capacity.[10] [Ex. K, p. 9, 12.] The New Mexico Supreme Court also carefully analyzed Begay's claim that there was insufficient evidence to support a finding of premeditation. [Ex. K, p. 13-14.]

39.     Begay has not shown that the state court findings were unreasonable, unsupported, or otherwise erroneous. Moreover, the state court's findings are entitled to deference under the AEDPA, as stated above, and will not be disturbed. *See* 28 U.S.C. § 2254(d) & (e). Therefore, to the extent that the "impossibility defense" merely encompasses some of Begay's earlier objections raised on direct appeal, this claim should be dismissed.

40.     If Begay now is arguing that he was mentally incompetent to stand trial and that an insanity defense should have been presented, this argument also is rejected. There was no evidence demonstrating that Begay was not competent to proceed to trial, nor does he present any evidence or argument to support a conclusion that trial counsel should have more fully investigated his mental background.

---

[10]The facts of this case are distinguishable from those in <u>Daniel v. Thigpen</u>, 742 F. Supp. 1535 (M.D. Ala. 1990), cited by Begay. In <u>Daniel</u>, the Court concluded "demonstrable errors" by counsel were plentiful, including counsels' personal disagreements with one another, doubts they did not convey to the client, personal dislike of the defense of insanity, little communication with the client or family, sketchy pretrial preparation, and failure to request a competency hearing even though they did not believe the defendant was competent.

41.     Finally, while counsel has a duty to make reasonable investigations under <u>Strickland</u>, a decision here not to inquire into Begay's sanity or mental competency does not appear unreasonable under all of the circumstances present before this Court.    <i>See</i> <u>Martinez v. Tafoya</u>, 13 Fed. Appx. 873, 877, 2001 WL 811662 at *3 (10th Cir. July 17, 2001) (when ineffective assistance claim centers on failure to investigate and elicit testimony from witnesses, the petitioner must "demonstrate, with some precision, the content of the testimony they would have given at trial.")  Moreover, a heavy measure of deference must be applied to counsel's judgment in this arena.  <u>Profitt v. Waldron</u>, 831 F.2d 1245, 1248 (5th Cir. 1987).[11]  The Court neither finds that trial counsel acted unreasonably in not investigating or presenting a defense of "impossibility" nor that there was a "reasonable probability" but for the "error" in investigating such a defense, the result of Begay's trial would have been different.

### 3.     <u>*Evidence of Film "Natural Born Killers"*</u> *(see supra, ¶ 3, grounds "e", "f" and "g"):*

42.     Begay argues that his counsel's performance was deficient by failing to request admission of the film "Natural Born Killers," not objecting to the State's argument that Begay was a "nihilistic thrillseeking killer" similar to the characters in the film, and not countering, during closing argument, the State's position that Begay's conduct was similar to characters in the film.  Begay claims, in part, that it was not reasonable for a jury to conclude that the "mere viewing" of a violent movie like "Natural Born Killers" could "create" a serial killer and also that statements made when

---

[11]In <u>Profitt</u>, the Fifth Circuit found that the petitioner's trial counsel was ineffective for failing to investigate Profitt's prior mental history for purposes of presenting an insanity defense.  However, the facts are distinguishable from those here.  For example, Profitt escaped from a mental institute and was adjudicated insane prior to committing the crime at issue.  His attorney not only failed to adequately investigate Profitt's prior mental history, he essentially left Profitt without any defense at trial.  831 F.2d at 1248-49.

"an individual is extremely inebriated are those of a highly unreliable nature." [Doc. 1, handwritten p. 10 (subpart 1(iii).] Begay also states that it should be noted that, on the night in question, he "committed no series of murders." Again, it is clear that Begay is not claiming he was innocent of the murder of Jim or that he did not make the statements about which his friends testified. Instead, he appears to be re-hashing arguments already raised and rejected on direct appeal.

43. Although Begay did not argue on direct appeal that his attorney was ineffective in failing to offer the film "Natural Born Killers" as a trial exhibit, he cannot satisfy either of the two prongs set forth in Strickland. First, Begay does not dispute that "Natural Born Killers" was a violent movie involving characters who killed innocent people for a thrill, that he watched the film many times, or that the phrase he apparently used about wanting "to pull a fatality" was taken from the film. Based on these circumstances, it cannot be concluded that counsel's apparent decision not to attempt to admit the film as evidence "fell below an objective standard of reasonableness." Certainly, defense counsel's decision not to require the jury to watch a very violent movie that Begay apparently watched repeatedly "might be considered sound trial strategy."

44. Moreover, even if somehow considered deficient performance, there is absolutely no support for a finding that Begay suffered "actual prejudice" by not introducing the film as a trial exhibit. Under these circumstances, there is no "reasonable probability" that Begay would have received a different outcome had the movie been viewed by the jury.

45. Begay's other arguments regarding the State's theory involving the film and his attorney's failure to counter the State's presentation already have been addressed and resolved on direct appeal by the New Mexico Supreme Court. Based on the deferential review owed to the state

court and this Court's failure to find that the New Mexico Supreme Court's rulings were erroneous, unreasonable or unsupported, these claims should be dismissed.

### 4. *Charge of Conspiracy (see supra, ¶ 3, ground "h"):*

46.     Begay was acquitted of the charge of conspiracy to commit 1st degree murder and now claims that his attorney's performance was deficient due to a failure to challenge and seek dismissal of this charge prior to trial.  Begay's argues that it was undisputed that he acted alone and that the co-defendants' mere presence at the scene was not evidence of a conspiracy.  [Doc. 1, handwritten pp. 10-11.]  Begay seems to imply that he could not have been convicted of conspiracy to commit 1st degree murder if his co-defendants/conspirators were not on trial with him or had not pled guilty to that charge.  Begay is mistaken.  He could have been found guilty of conspiracy to commit 1st degree murder if the jury concluded he agreed to act together with another person to commit 1st degree murder and that he and another intended to commit 1st degree murder.  *See* SCRA 14-2810.  While the gist of the offense involves a combination of two or more people, conviction of more than one co-conspirators is not required.  State v. Verdugo, 79 N.M. 765, 766, 449 P.2d 781, 782 (1969).

47.     In any event, Begay again does not provide any support for the argument that his counsel acted unreasonably in not attempting to obtain a dismissal of this charge prior to trial or how it could have changed the outcome of his trial, since he was acquitted of the conspiracy charge. Begay's ineffective assistance of counsel with respect to the conspiracy charge should be dismissed.

### 5. *Appellate Counsel's Performance (see supra, ¶ 3, ground "i"):*

48. Begay asserts that his appellate counsel's assistance was ineffective for failing to raise on direct appeal the issue regarding a cautionary or limiting instruction with respect to the admissions of guilty or guilty pleas of his former co-defendants.

49. <u>Strickland</u> provides the test for determining sufficiency of appellate counsel as well as of trial counsel. <u>Hain v. Gibson</u>, ___ F.3d ___, 2002 WL 241289 at *4 (10th Cir. Feb. 20, 2002); <u>United States v. Cook</u>, 45 F.3d 388, 392 (10th Cir. 1995).

50. When a movant argues that his appellate counsel failed to include an issue for review on direct appeal, the merits of the omitted issue must first be evaluated. *See* <u>Cook</u>, 45 F.3d at 392. An appellate counsel is not required to raise every non-frivolous argument on appeal. <u>Id.</u> at 394.

51. Here, even assuming appellate counsel's failure to raise the issue of a limiting instruction was constitutionally deficient, that failure did not prejudice Begay because the result of his proceeding would have remained the same even if the Court had considered this argument. First, had the issue been included on appeal, the review would have been governed by the plain error standard since Begay's trial counsel did not object to the lack of such an instruction nor did he try to submit a limiting instruction. The Tenth Circuit has never held that a trial court's failure to provide a limiting instruction constitutes per se plain error. <u>Whitney</u>, 229 F.3d at 1304. Plain error is not found where admission of evidence of co-defendants' guilty or guilty pleas is presented for a legitimate purpose, even without a cautionary instruction. <u>Id.</u> at 1305-07; <u>United States v. Pedraza</u>, 27 F.3d 1515, 1526 (10th Cir. 1994); <u>United States v. Davis</u>, 766 F.2d 1452, 1456-57 (10th Cir.), *cert. denied*, 474 U.S. 908, 106 S.Ct. 239 (1985); *see also* <u>United States v. Hurtado</u>, 47 F.3d 577, 585 (2d Cir.) ("Although such an instruction should have been given if requested, the district court's

failure to *sua sponte* issue such a limiting instruction is not plain error in light of the overwhelming evidence of [the defendant's] guilt."), *cert. denied*, 516 U.S. 903, 116 S.Ct. 266 (1995); United States v. Hernandez, 921 F.2d 1569, 1582 (11th Cir.) (failure to give sua sponte limiting instruction is plain error only where State emphasizes co-defendant's plea for no other reason than to prejudice the defendant.), *cert. denied*, 500 U.S. 958, 111 S.Ct. 2271 (1991).

52. As is discussed at length above, Begay did not present any evidence or argument showing that evidence of his former co-defendants' admissions of guilt were used improperly against him, that the State emphasized the co-defendants' pleas for no reason but to prejudice Begay, and/or that the prosecution repeatedly and improperly referred to the co-defendants' guilty pleas. Based on these facts, Begay has not established that the failure to raise this issue on appeal prejudiced him. Thus, this ineffective assistance of counsel claim also should be dismissed.

### Recommended Disposition

That Begay's § 2254 petition [doc. 1] be denied and that the case be dismissed with prejudice.

_____
Lorenzo F. Garcia
United States Magistrate Judge